## Commonwealth ex rel. *v.* Bickel et al., Appellant.

*Infants—Juvenile courts—Neglect of children—Status—Commitment to orphanage—Evidence—Sufficiency—Act of April 23, 1903, P. L. 274.*

Under the Act of April 23, 1903, P. L. 245, a neglected child is any child who is destitute, homeless, abandoned or dependent upon the public for support and who has not proper parental care or guardianship.

On a petition by a probation officer, to have two children taken from the custody of an individual and committed to a public orphanage, evidence that the children were not always washed and that they played near a city dump is not sufficient to warrant the lower court in taking the children from the custody of the person with whom their parents had placed them and sending them to a public institution.

Submitted October 24, 1921. Appeal, No. 110, Oct. T., 1921, by Evelyn Bickel, from decree of C. P. Blair Co., June T., 1921, No. 43, in the case of Commonwealth ex rel. Robert Bickel and Wilbur Butts v. Mrs. Evelyn Bickel, Mrs. Mary Butts and John Eckels. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Action in nature of a writ of habeas corpus to determine the custody of Robert Bickel and Wilbur Butts. Before BALDRIGE, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered the following decree:

Now, March 29, 1921, this matter came on to be heard, after hearing the testimony, arguments of counsel and giving the same consideration, it is hereby ordered that Wilbur Butts and Robert Bickel be removed from the custody of John Eckels to the Blair County Orphanage at Williamsburg, Pa., until further order of the court, as that seems to be for the best interest of the children aforesaid.

Defendant appealed.

*Error assigned* was the order of the court.

*R. A. Enderson,* for appellant.

No appearance and no printed brief for appellee.

OPINION BY HEAD, J., March 3, 1922:

This proceeding had its inception in a petition filed by one Miss Mary G. Davis, probation officer of the Court of Quarter Sessions of Blair County, sitting as the juvenile court. In her petition she sought to have the court exercise its power as a juvenile court to take away from the respondents the custody of two partially orphaned children and have them sent to a public institution for the care of children in that county. The two children were in no wise related. The father of one of them was dead; the father of the other was supposed to be living, but he had deserted his wife and she knew nothing of his whereabouts. The mothers of both of them were living. The evidence, without contradiction, shows that the children were living with the respondents with the

knowledge, consent, and approval of their respective mothers.

The petition of Mary G. Davis, probation officer of the Juvenile Court of Blair County, started the machinery of the law in motion. Counsel for respondents at once objected that the Juvenile Court of Blair County was without jurisdiction to make an order transferring the custody of the two children in question from the respondent, John Eckels, to a public institution, spoken of as the Orphanage Asylum of Blair County. It was agreed by stipulation of counsel at the hearing that the case should be considered by the judge and disposed of as if a writ of habeas corpus had been issued and the important question involved should be determined by the judge as if sitting in a hearing of such writ duly and regularly issued. If all of the parties concerned saw fit to have the case disposed of in this way we see no reason why an appellate court should trouble about the status of the case on the record as presented.

Now, the petition on which the entire question rests mentions but one thing, which would have prevented the court sweeping aside the whole proposition on a demurrer to the petition. That averment in the petition was this: "and that the said children are unlawfully neglected." The statute which confers upon the courts of quarter sessions of Pennsylvania sitting as juvenile courts jurisdiction to interfere in a case of neglected children defines what is meant by "neglected children." We quote from the Act of 1903: "and for the purpose of this act the words 'dependent child' and 'neglected child' shall mean any child who is destitute, homeless, abandoned or dependent upon the public for support or who has not proper parental care or guardianship." There is but a scant bit of testimony that would even seem to support the averment in the petition that these children were "neglected" within the meaning of the statute. It may be they were dirty, not up to the standard of cleanliness that modern health regulations imposed. It was not the purpose of the statute to make dirty children

clean, if they were otherwise healthful and in no way threatened the public health of the citizens of the Commonwealth. The great bulk of the evidence seems to show there was really nothing wrong with the children who are the subject of this complaint except that they were dirty and not well groomed. Much of the evidence was directed to a description of a public dump pile not on the property of the respondents but adjacent to it. Some small part of the effort that has been expended in this case if directed to the city authorities would doubtless have led to the removal of the dump pile. That removed there would be little left to this case. It was not the purpose of the statutes now in force in Pennsylvania to prescribe just how often in a week a child should be scrubbed. Within the writer's knowledge a generation of vigorous men and women have grown up under conditions that would not meet the approval of some of the witnesses of the Commonwealth. There is no evidence of any sickness among these children. There is plenty of evidence on behalf of the respondents that the children are well enough cared for and do not by any means come within the language of the statute. There is evidence, uncontradicted, that the mothers of both of these children are capable of maintaining them in such reasonable home as would satisfy every requirement of the statute. Looking over all of the evidence, we cannot see a case which would justify the strong arm of the law in taking these children away from the custody of the respondents in whom their mothers have confidence and sending them to a public institution, which may mean a great deal in their future lives. We are of opinion that the learned judge below made a mistake in ordering these children to be taken away from the habitation or place where they lived with the consent and approval of their respective mothers and transferring them to a public institution of the State of Pennsylvania. We must, therefore sustain the assignments of error. The order or decree of the court below is reversed, the costs of this appeal to be paid by the appellees.